UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS W. PIGEON, an individual, TWP CONSULTING, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WESTERN SKYWAYS, INC., a Colorado Corporation and DOES 1 to 100,<br><br>Defendants. | Case No.: 14-CV-1813 JLS (KSC)<br><br>**ORDER DENYING MOTIONS TO AMEND JUDGMENT; DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST**<br><br>(ECF Nos. 148, 150, 157, 160, 161, 165) |

This matter came to trial on January 8, 2018 before a jury of eight people. On January 10, 2018, the evidence presented at trial having been fully considered, the jury began deliberating. On January 12, 2018, the jury unanimously found in favor of Plaintiffs Thomas W. Pigeon and TWP Consulting, Inc. on a special verdict. In sum, the jury awarded $85,600 to Plaintiffs. (*See* "Judgment," ECF No. 158.)

What followed after this verdict were a flurry of motions and amended motions by both Parties. First, Plaintiffs filed a Motion for Award of Pre-Judgment Interest, ("Pl. Interest MTN," ECF No. 148-1). Defendant then filed a Motion to Alter or Amend Judgment, but soon after filed an Amended Motion. The Court will review only the Amended Motion, ("Def. MTN to Amend," ECF No. 161). Plaintiffs then filed a Motion to Alter or Amend Judgment, ("Pl. MTN to Amend," ECF No. 157), but also filed an

Amended Motion which also appears to double as Plaintiffs' Opposition to Defendant's Motion, ("Pl. Opp'n," ECF No. 165). Defendant also filed a Motion for Judgment as a Matter of Law, ("Def. MTN for JMOL," ECF No. 160).

## BACKGROUND

The facts of this case have been adequately summarized in prior orders by this Court, (*see, e.g.*, ECF No. 56, at 2–6),[1] and the Court recites an abbreviated summary here. Plaintiffs purchased two re-manufactured engines from Defendant ("Engine #1" and "Engine #2"). Before purchasing the engines, the Parties discussed Defendant's "Gold Seal Warranty." In part, this Warranty states: "WESTERN SKYWAYS' TOTAL LIABILITY FOR DAMAGES RELATION TO [sic] OR ARISING OUT OF THE USE OF THE ENGINE, REGARDLESS OF THE TYPE OR CAUSE OF SUCH DAMAGE, SHALL NOT EXCEED THE ORIGINAL PURCHASE PRICE FOR THE ENGINE." (Exhibit 502.)[2] The Parties disputed whether this Warranty was an enforceable part of the contract. At trial, the jury determined that "Plaintiffs and Defendant intended to incorporate the Gold Seal Warranty and its terms into the contract." (Judgment 2.) For the breach of contract claim, the jury determined that Plaintiffs had general damages of $85,600 as a result of Defendant's breach of contract for both engines. (*Id.* at 2, 3.) $37,800 of this amount was awarded for general damages to Engine #1, and $47,800 was awarded for general damages to Engine #2. For the negligence claim, the jury found that Defendant did not breach its duty to Plaintiffs as to either engine. (*Id.* at 3.) For the products liability claim, the jury found that Engine #1 was not defective. (*Id.* at 6.) The jury found that Engine #2 was defective and that Plaintiffs had damages as a result. (*Id.* at 9.) But, the jury ultimately awarded no damages for this claim. (*Id.* at 14.) For the misrepresentation claim, the jury found that Defendant did not fail to make any disclosures with the intent of creating a false impression of the actual facts in the mind of Plaintiffs.

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.
[2] The trial exhibits were not filed electronically on CM/ECF.

(*Id.* at 10.) The only damages awarded were due to the breach of contract. (*Id.* at 13.)

In sum, Defendant argues the jury verdict is inconsistent because the jury found the Warranty applied to both engines, but awarded Plaintiffs more than the cost of the engines. (Def. MTN to Amend 3.) Defendant cites to evidence at trial that the original purchase price for the engines was $17,560 each. (*Id.*) Plaintiffs also argue, in part, that the jury verdict is inconsistent. Finally, Defendant requests judgment as a matter of law "as to Plaintiffs' claims of breach of contract, negligence, products liability, and misrepresentation, as well as to the damages awarded by the Jury." (Def. MTN for JMOL 2.)

**LEGAL STANDARD**

**I.  Motion to Amend or Alter Judgment**

Under Rule 59(e) of the Federal Rules of Civil Procedure, a party may move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Such reconsideration of a judgment is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Ultimately, whether to grant or deny a motion for reconsideration is in the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883); *see Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (stating district courts have "considerable discretion" when addressing motions to amend a judgment under Rule 59(e)).

**II. Judgment as a Matter of Law**

Federal Rule of Civil Procedure 50(b) allows a party to file a renewed motion for judgment as a matter of law after entry of judgment on a jury verdict. To file a renewed motion under Rule 50(b), a party generally must first file a motion for judgment as a matter

of law under Rule 50(a) before the case is submitted to the jury. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). If the court denies or defers ruling on the Rule 50(a) motion and the jury returns a verdict against the moving party, the party may then renew the motion under Rule 50(b). *Id.* Because it is a "renewed" motion, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Id.* (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

In ruling on a 50(b) motion, the court may allow judgment on the verdict, order a new trial, or reverse the jury and direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). In reviewing the motion, "[t]he test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). The court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, the court reviews the evidence "in the light most favorable to the nonmoving party" and draws "all reasonable inferences in that party's favor." *Josephs*, 443 F.3d at 1062. The jury's verdict is reviewed for "substantial evidence." *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002). The Ninth Circuit has defined substantial evidence as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (citing *George v. City of Long Beach*, 973 F.2d 706, 709 (9th Cir. 1992)).

## ANALYSIS

### I. Motions to Amend or Alter Judgment

Neither Party argues there is new evidence or law since judgment was entered that should change the jury's verdict, thus, the Court analyzes the Motions to Amend under the "clear error" and "manifest injustice" standard.

///

### A. *Plaintiffs' Motion*

Plaintiffs make various arguments as to why the jury erred in making its determination.

#### 1. *Jury Instructions*

Plaintiffs argue the jury did not follow the second or third paragraph of jury instruction 30.37. This instruction was given as Court's Instruction #44. ("Jury Instructions," ECF No. 144, at 47.) The sections of this instruction referenced by Plaintiffs provide: "To award general and/or special damages, you must find by a preponderance of the evidence that the Plaintiffs had damages as a result of the breach, and you must determine the amount of those damages. If you find in favor of the Plaintiffs, but do not find any general and special damages, you must award Plaintiffs nominal damages." The Court disagrees with Plaintiffs and finds there is no evidence the jury failed to follow this instruction. The jury found the contract had been breached, and awarded general damages. The jury provided the amount of these damages. The jury was not required to award special or nominal damages.

Plaintiffs also argue the jury did not follow jury instruction 30.38. This instruction was given as Court's Instruction #45. (*Id.* at 48.) Plaintiffs misquote this instruction and state, "if 'general' damages have been provided, you shall award–Diminution of Value; Loss of Use; Lost Profits; Costs of Recovery." (Pl. Opp'n 4.) The jury instruction does not say this, but instead says: "If general damages have been proved, you shall award those damages which are the amount required to compensate the Plaintiffs for the losses that are the natural and probable consequence of the Defendant's breach of the contract." (*Id.*) The jury awarded general damages in an amount it deemed reasonable and did not misapply this jury instruction. The Court **DENIES** Plaintiffs' Motion to Amend regarding the argument that the jury misapplied the above jury instructions.

#### 2. *Products Liability*

Plaintiffs also argue the jury "mistakenly placed a '0' under the damages section for products liability." (Pl. MTN to Amend 2.) Plaintiffs state the amount of judgment should

be increased from $85,600 to $204,000. (*Id.*) In support, Plaintiffs cite to the testimony of their expert who "provided sufficient evidence to establish that Plaintiff [sic] was damaged in the amount of $408,000.00 which was the result of two failed aircraft engines." (*Id.* at 3.) In Plaintiffs' view, because the jury determined that one aircraft engine was defective, the award should be $204,000. The Court disagrees; the jury could have reasonably found that although one engine was defective, Plaintiffs failed to mitigate their damages and therefore the damages for product liability should be $0. (*See* Jury Instructions 52 (providing instruction on the affirmative defense of failure to mitigate).) The Court **DENIES** Plaintiffs' Motion to Amend as to this claim.

### B. Incorporation of the Warranty / Damages

Both Parties argue there is an inconsistency in the jurors determining: (1) the Gold Seal Warranty was incorporated into the contract, but (2) awarding $85,600 (which is more than the cost of the engines). (Pl. Opp'n 4; Def. MTN to Amend 2.) The special verdict form first asked the jury: "Do you find that Plaintiffs and Defendant intended to incorporate the Gold Seal Warranty and its terms into the contract?" The jury answered yes. (Judgment 1.) The special verdict form later directed the jury: "If your answer to question 1 is '**YES**' then do not answer question 7." (*Id.* at 2.) This is because the Gold Seal Warranty provided that Defendant would not be liable for special damages. Following directions, the jury did not answer question 7.

Plaintiffs first argue the jury intended to award special damages for the breach of contract claim because the jury "did not answer questions as to 'special' damages" and should have written "no" or "0" in answering the question: "Do you find that Plaintiffs had special damages as a result of the breach . . . ?" (Pl. Opp'n 2–3; Judgment 2, 7.) Plaintiffs argue the jury "did not intend to find the 'Gold Seal Warranty / Disclaimer' was integrated into the contract" and therefore, the award of damages should not be reduced. (Pl. Opp'n 3.) In the alternative, Plaintiffs argue "the special verdict form cannot be rationally harmonized with the resulting award, in which case the judgment must be vacated and a new trial ordered." (*Id.*)

The Court disagrees with Plaintiffs that the jury somehow erred in leaving question 7 blank. In fact, the jury was clearly instructed to do so if it determined the Warranty was integrated into the contract. The Court finds this is not evidence that the jury intended to find the Warranty was not integrated into the contract. The Court now addresses the alleged inconsistency between the jury's determination of the integration of the Warranty and the award of $85,600.

In support of its argument, Defendant points to Plaintiffs' Trial Exhibit 85. Plaintiffs' counsel went over this exhibit with Mr. Pigeon, which he testified to be "the full payment for two engines." ("First Tr. Trans.," ECF No. 151, at 127.) The exhibit itself is a series of checks followed by a document titled "Quotation." (ECF No. 161-3.) At the bottom of that page is handwritten: "This contract is for 2 engines, @ $17,560—$8,780 ea." (*Id.* at 8.) Mr. Pigeon later notes this handwritten notation was incorrect, and the cost of each engine was $17,560. (First Tr. Trans. 187.)

Plaintiffs called Juan Castro, a certified FAA Inspector. ("Second Tr. Trans." ECF No. 152, at 70.) Mr. Castro inspected the two engines. (*Id.* at 72.) He opined that Engine #1 failed because "the valve was stuck on the valve guide" and the valves needed to be removed with a hammer to drive them out of the cylinders. (*Id.* at 84–85.) He concluded, "the diameter of the valve guide was too tight and caused the valve to seize or . . . to not be able to go up and down." (*Id.* at 86.) As to Engine #2, Mr. Castro opined this engine failed because the valve was stuck in the open position and this caused a hole in the piston. (*Id.* at 90–91.)

At closing, Defendant argued that simply because Mr. Castro testified that the engines both had stuck valves, this does not prove this happened through any fault of Defendant. ("Third Tr. Trans.," ECF No. 153, at 93.) The jury disagreed and found that "Defendant failed to provide a Lycoming engine re-manufactured to 'new limits and tolerances,'" for both engines. (Judgment 2, 3.) The Court finds this to be a reasonable conclusion. The jury heard no evidence that the valves were stuck through the fault of Plaintiffs. Thus, it was reasonable for them to conclude that Defendant failed to provide

satisfactory engines and thus breached its duty to Plaintiffs.

To prove their theory of damages caused as a result of the failed engines, Plaintiffs called Jeffrey Porter. Mr. Porter is a certified public accountant practicing in the area of forensic accounting. (Second Tr. Trans. 129.) Mr. Porter reviewed financial statements for Plaintiff TWP Consultants, Inc., as well as bills, expenditures, and revenue from the sales of planes. (*Id.* at 130.) He testified the damages related to lost income were $160,217. (*Id.* at 132.) The expenses incurred by Plaintiffs due to Defendant's engines was $83,084. (*Id.* at 134.) This amount was composed of the expenditures, the cost of the engines, the return of the core costs, and the cost of the fuel and oil the engines incurred. (*Id.* at 153.)

Mr. Porter further testified Plaintiffs sold the planes for $48,000, which should be constituted as mitigation and deducted from the calculation of damages. (*Id.* at 134.) He testified the value of Plaintiffs' business was $213,000. (*Id.* at 132.) In sum, he calculated total damages to be $408,301. (*Id.*) The jury ultimately awarded no special damages and awarded $85,600 in general damages. Both Parties argue the verdict is inconsistent.

"[W]here inconsistent verdicts are alleged, the test is not whether there was substantial evidence for the jury's conclusion, but whether it is *possible to reconcile* the verdicts." *Vaughan v. Ricketts*, 950 F.2d 1464, 1471 (9th Cir. 1991). "'[T]he jury verdict must be upheld unless it is impossible to harmonize the answers under a fair reading,' though we will not save the general verdict if that would 'require us to torture a fair reading.'" *White v. Ford Motor Co.*, 312 F.3d 998, 1005 (9th Cir. 2002) (quoting *L.A. Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1354 (9th Cir. 1987)).

The Court finds the jury's verdict is supported by the evidence. In calculating damages, the jury likely started with the costs of the engines, or $35,120. The jury also likely reviewed the Gold Seal Warranty in full. (*See* Exhibit 502.) The Gold Seal Warranty first provides there are full and limited warranties on the engines. The full and limited warranties "both include parts and labor." The full warranty "covers 100% parts and labor." At trial, Defendant reviewed an e-mail from its sales representative, Mr. Eric Barker, to Mr. Pigeon. Mr. Barker told Mr. Pigeon: "The warranty is this: 6 months 100%

parts and labor–no hour limit." (Exhibit 80.)

The Court assumes the jury awarded damages for parts and labor, as Mr. Pigeon was promised. Mr. Pigeon testified he "paid everything that [he] was asked to pay to remanufacture" the two engines. (Second Tr. Trans. 64–65.) Plaintiff's expert Mr. Porter testified that the total expenses incurred due to engine installation was $83,084. However, as noted by Defendant in closing argument, Mr. Porter added $1,000 for shipping costs, and shipping costs are not permitted under the Gold Seal Warranty. (Third Tr. Trans. 102.) The jury also was shown Exhibit 506, which is a "Customer Warranty Claim Form" and invoiced repair costs of $2,016 for work done in January 2014. (*See* Exhibit 506.) Finally, Mr. Pigeon testified he paid $1,500 to Defendant for work performed on one of the planes when it was in Montrose, Colorado. (Second Tr. Trans. 63.) This totals $85,600.[3] Given that Mr. Pigeon testified he paid for the parts and labor, it is reasonable for the jury to award these funds to Mr. Pigeon as reimbursement, as was promised in the Gold Seal Warranty. This is not an award of special damages, which was prohibited by the Gold Seal Warranty.

Defendant chose not to call an expert on damages, and the jury therefore had no conflicting testimony to the amount of damages presented by Plaintiffs' expert Mr. Porter. The jury therefore did not issue an inconsistent verdict in determining the Gold Seal Warranty was a part of the contract, and awarding $85,600 to compensate Plaintiff for the breach of contract. The Court **DENIES** both Plaintiffs' and Defendant's Motions to Amend or Alter Judgment.

## II. Judgment as a Matter of Law

A party may file a motion for judgment as a matter of law on the ground that the jury's answers to the verdict questions are inconsistent. *See Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987). In considering jury answers to questions in a special

---

[3] $83,084 (from Mr. Porter) – $1000 (for shipping) + $2,016 (for repair costs) + $1,500 (for repair costs in Montrose) = $85,600.

verdict, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them. . . . We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, . . . before we are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963); *see also Atl. & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.").

At trial, Defendant made a Rule 50(a) motion, but did not specify as to which causes of action the motion was brought. (Second Tr. Trans. 187.) In discussing the motion with the Court, Defendant indicated it intended "to move for directed verdict on products liability and negligence . . . [and] misrepresentation." (*Id.* at 181–82.) The Court then clarified: "products liability, negligence and misrepresentation" to which Defendant responded, "Yes. Then I would move to the Court that as a matter of the law the warranty is part of the contract and that there are no [consequential] damages." (*Id.* at 182.) The Court deferred ruling on Defendant's Motion. Defendant never made Rule 50(a) motion regarding the breach of contract cause of action. In ruling on a Rule 50(b) motion based on grounds not previously asserted in a Rule 50(a) motion, the court is "limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice." *Janes*, 279 F.3d at 888 (internal quotation marks and citation omitted). As noted above, the Court finds the jury's determination of a breach of contract to be supported by evidence. The Court finds no plain error or miscarriage of justice. The Court now considers Defendant's Motion regarding the other causes of action previously asserted in Defendant's Rule 50(a) oral motion.

The jury found for Defendant on the causes of action of products liability, negligence, and misrepresentation because it ultimately awarded no damages for these causes of action. (*See* Judgment 4–14.) The Court finds the jury's verdict to be consistent and supported by evidence. The Court also finds the jury's award of damages is reasonable,

10

14-CV-1813 JLS (KSC)

as detailed above. The Court **DENIES** Defendant's Motion for Judgment as a Matter of Law.

### III. Motion for Pre-Judgment Interest

Plaintiffs argue they "are entitled to pre-judgment interest from the filing date of August 4, 2014, through the date the jury's verdict was entered, January 12, 2018, in the amount $33,001.45." (Pl. Interest MTN 2.) Plaintiffs cite Colorado Revised Statute § 5-12-102 for their position that "interest shall be at a rate of eight percent per annum for all moneys." (*Id.*) Plaintiffs failed to include the entirety of the statute, which states: "Interest shall be at the rate of eight percent per annum compounded annually <u>for all moneys or the value of all property after they are wrongfully withheld or after they become due</u> to the date of payment or to the date judgment is entered, whichever first occurs." Colo. Rev. Stat. Ann. § 5-12-102 (emphasis added). "[A] wrongful withholding only requires the failure to pay or deliver money or property when there is an obligation to do so." *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d 549, 551 (Colo. Ct. App. 2000), *overruled on other grounds by USAA v. Parker*, 200 P.3d 350 (Colo. 2009). Neither Party addresses this requirement. However, the Court finds it need not address this issue due to the damages limitation in the Gold Seal Warranty.

Under Colorado law, "[p]rejudgment interest is an element of damages." *Taylor Morrison of Colo., Inc v. Terracon Consultants, Inc.*, 410 P.3d 767, 775 (Colo. Ct. App. 2017). In *Taylor Morrison*, the court determined that because the contract between the parties limited the defendant's liability for "any and all injuries, *damages*, claims, losses, or expenses," this limitation included prejudgment interest. *Id.* No prejudgment interest was awarded. Similarly, here, the Gold Seal Warranty limits damages to the original purchase price of the engine (and provided warranties, as detailed above). Because the jury determined the Gold Seal Warranty was a part of the contract, this limits the recovery of prejudgment interest. The Court **DENIES** Plaintiffs' Motion for Prejudgment Interest.

///

///

## CONCLUSION

The Court **DENIES** all pending Motions:

(1) Plaintiffs' Motion for Prejudgment Interest, (ECF No. 148-1);

(2) Defendant's Motion to Alter or Amend Judgment, (ECF Nos. 150, 161);

(3) Plaintiffs' Motion to Alter or Amend Judgment, (ECF Nos. 157, 165);

(4) Defendant's Motion for Judgment as a Matter of Law, (ECF No. 160).

**IT IS SO ORDERED.**

Dated: June 7, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge